IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**BRETT JOHNSON,**

   *Plaintiff*,

  v.

**MARYLAND TRANSIT
ADMINISTRATION,** *et al.*,

   *Defendants*.

Case No.: 1:25-cv-01574-JRR

## MEMORANDUM OPINION

Pending before the court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint or in the alternative, for Summary Judgment.[1] (ECF No. 6; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion, construed as a motion to dismiss, will be granted in part as to Plaintiff's claim pursuant to 42 U.S.C. § 1983; the remaining state law claims will be remanded to the Circuit Court for Baltimore City.

**I. BACKGROUND**[2]

Plaintiff Brett Johnson initiated this action in the Circuit Court for Baltimore City, Maryland (Case No. C-24-CV-24-004188) on November 27, 2024, against the Maryland Transit Administration ("MTA") and MTA Officer Anthony Congress. (ECF No. 2.) On April 15, 2025, Plaintiff filed an Amended Complaint in the Circuit Court. (ECF No. 3.)

Plaintiff's Amended Complaint raises the following counts:

  Count I: Violation of Article 24 of the Maryland Declaration of Rights;

  Count II: False Imprisonment; and

---

[1] The court will also address Defendants' Motion to Strike (ECF No. 11) raised in its reply in further support of the Motion.

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 3.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

1

Count III: Violation of Civil Rights under 42 U.S.C. § 1983

(ECF No. 3 ¶¶ 22–36.)

Plaintiff is employed as a bus driver for the MTA. (ECF No. 3 ¶ 1.) Prior to the start of each workday, the MTA verifies that Plaintiff's license is valid and that there are no open warrants against him. *Id.* ¶ 2. Plaintiff's license contains his full name, date of birth (June 3, 1963), and personal Soundex number (J525-098-809-417). *Id.* ¶ 8. On October 6, 2022, presumably having cleared the usual license check, Plaintiff was operating an MTA bus when he was involved in a motor vehicle accident. *Id.* ¶ 4. The Baltimore County Police Department responded to the scene and asked Plaintiff to produce his license. *Id.* ¶ 6. The Baltimore County police officer confirmed there were no open warrants for anyone at the scene of the accident, including Plaintiff. *Id.* ¶ 9. Baltimore County Police then handed off the scene to the MTA police for further investigation. *Id.* ¶ 11.

Upon arrival, MTA Officer Congress ran another check for open warrants against Plaintiff. (ECF No. 3 ¶ 12.) Officer Congress received information that there was an outstanding warrant for a William Johnson, with a date of birth of March 23, 1962, and Soundex number J525-887-303-234. *Id.* ¶ 13. On the basis of this information, Officer Congress arrested Plaintiff, placed him in handcuffs on the open street, and transported him to jail. *Id.* ¶ 14. After Plaintiff had been detained for several hours, Officer Congress examined the warrant and determined he could no longer detain Plaintiff because the full name, date of birth, and Soundex number on the warrant did not match Plaintiff's information. *Id.* ¶ 17. Plaintiff alleges he has never used an alias. *Id.* ¶ 18. Plaintiff was advised by his supervisor to "go along with the arrest and not resist." *Id.* ¶ 20. He claims that, as a result of the incident, he suffered humiliation and anguish. *Id.* ¶ 21.

Plaintiff asserts that Officer Congress violated his rights under Article 24 of the Maryland Declaration of Rights by intentionally arresting him without legal justification and

that the MTA failed to properly train/and or supervise Officer Congress regarding warrant verification protocols. (ECF No. 3 ¶¶ 23-24.) Additionally, Plaintiff asserts that Officer Congress falsely imprisoned him "because he knew that the warrant was for another individual" and yet he arrested and detained him. *Id.* ¶ 27. He also seeks to hold Defendant MTA liable for false imprisonment under the theory of *respondeat superior*. *Id.* ¶ 29. Finally, Plaintiff alleges that Officer Congress, acting under color of state law, subjected him to unlawful and unreasonable seizure in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983. *Id.* ¶¶ 31-32. Plaintiff seeks compensatory damages in excess of $75,000 against all Defendants. *Id.* ¶ 36.

Defendants removed the action to this court on May 15, 2025 (ECF No. 1), and filed the Motion on May 22, 2025. (ECF No. 6.) On July 6, 2025, Plaintiff filed an opposition to the Motion. (ECF No. 10.) In addition to their reply in support of the Motion, Defendants filed a Motion to Strike Plaintiff's opposition as untimely under Local Rule 105.2. (ECF. No. 11.) Plaintiff opposes the Motion to Strike. (ECF. No. 12.)

## II.    LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(d)

Defendants bring their Motion as a motion to dismiss or, alternatively, for summary judgment. "A motion with this caption implicates the court's discretion under FED. R. CIV. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion."

3

*Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 WL 5335477, at *3 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

This case is in its infancy and there has been no discovery. Plaintiff asserts that summary judgment is premature and that discovery is needed. (ECF No. 10-1 at p. 12.) In light of the foregoing, and where, as here, the court need not consider matters outside the pleading, the court declines to convert the Motion, and will therefore evaluate the Motion as one to dismiss per Rule 12(b)(6). As such, the court declines to consider the exhibits attached to the parties' respective motions papers.[3] FED. R. CIV. P. 10(c); *Goines v. Valley Comm. Servs. Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016).

### B. Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452,

---

[3] In considering the Motion, the court may of course consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). Here, no party argues, nor does the court discern, that the attached exhibits—affidavits and the incident report—are integral to the Amended Complaint. *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (explaining that a document is integral to a pleading if "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted'") (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).

479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'"[4] *Id.*

Defendants raise a facial challenge to the court's subject matter jurisdiction; they argue that Plaintiff's action against the MTA is barred by Eleventh Amendment sovereign immunity. (ECF No. 6-1 at pp. 7–9.) Sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

---

[4] Because the court addresses Defendants' jurisdictional arguments only as to Eleventh Amendment sovereign immunity, and Defendants do not offer exhibits in support of same, the court need not consider the attached exhibits in addressing Defendants' jurisdictional argument.

### C. Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, "a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

Defendants assert four arguments in their motion: (1) Plaintiff's claims against Officer Congress should be dismissed because he enjoys immunity from liability under Maryland law; (2) Plaintiff's claims against the MTA are barred by Eleventh Amendment sovereign immunity;

(3) Plaintiff's claims are jurisdictionally barred for failure to file an administrative claim with the Maryland Workers' Compensation Commission; and (4) Plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6).  (ECF No. 6-1 at pp. 6-13.)  The court begins by addressing Defendants' arguments as to Count III, Plaintiff's sole federal claim, for unlawful seizure in violation of the Fourth and Fourteenth Amendments and 42 U.S.C § 1983.

### A. Plaintiff's Section 1983 Claim (Count III)

#### 1. *Official vs. Individual Capacity*

In assessing the viability of Plaintiff's § 1983 claim, the court first must determine whether the claim was brought against Officer Congress in his official and/or individual capacity.  "[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).  "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.*

"Personal capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis in original).  Additionally, the Fourth Circuit has held that factors indicating that a state official is being sued in an individual capacity include "plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom . . . [and] plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

Plaintiff does not expressly state whether he sues Officer Congress in his official or individual capacity, or both.  Plaintiff alleges that "Officer Congress, acting under color of state

law, subjected Plaintiff to unlawful seizure in violation of the Fourth and Fourteenth Amendments." (ECF No. 3 ¶ 31.)[5]  Plaintiff, however, also seeks "compensatory damages under 42 U.S.C. § 1983." *Id.* ¶ 36.  While the general factual allegations strongly suggest Plaintiff intends to sue Officer Congress solely in his official capacity, because Plaintiff seeks compensatory damages, the court will address the claims against Officer Congress in both his official and individual capacities.

### 2. *Eleventh Amendment Sovereign Immunity*

Defendants assert that Plaintiff's § 1983 claim against Defendant MTA (and therefore against Officer Congress in his official capacity) is barred by Eleventh Amendment sovereign immunity.  (ECF No. 6-1 at pp. 7-9.)  The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. AMEND. XI.  Under the Eleventh Amendment, states generally enjoy immunity from suit unless a state waives its immunity, or the immunity is abrogated by Congress.  *See Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) (explaining that "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.  We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." (citations omitted)); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) (providing that "state sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it.").  As explained above, a finding that a defendant enjoys sovereign

---

[5] The court notes that Defendants do not raise the issue of capacity in their Motion and argue that Plaintiff is suing Officer Congress in his official capacity and not his individual capacity for the first time in their Reply. (ECF No. 11 at p. 3.)

immunity on a claim presents a jurisdictional bar to the court's adjudicative power over such claim. *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018).

Sovereign immunity also operates to bar suit against state agencies. *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–102 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). The Maryland Department of Transportation ("MDOT") is a "principal department" of Maryland state government. MD. CODE ANN., TRANSP. § 2-101. The MTA is one of nine department units within MDOT. *Id.* § 2-107(a). The MTA is thus a state agency entitled to sovereign immunity. *McCray*, 741 F.3d at 483 (holding that the MTA is a state agency entitled to sovereign immunity "absent abrogation of sovereign immunity or consent from Maryland"); *Johnson v. Maryland Dep't of Transp.*, No. CV ELH-18-1059, 2018 WL 6111779, at *6 (D. Md. Nov. 21, 2018) (determining that the "MTA . . . is an arm of the state" entitled to sovereign immunity); *Hopkins v. MTA Bus*, No. PWG-13-1378, 2014 WL 4662525 (D. Md. Sept. 17, 2014) ("The MTA . . . is an agency of the State of Maryland, and therefore is immune from suit in federal court under the same circumstances as the state itself would be."); *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542 (D. Md. 2008) (holding that sovereign immunity rights extend to the MTA).

Relevant here, "[l]awsuits against state officials in their official capacities, . . . are the equivalent of suits against the state itself." *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 167 (D. Md. 2022); *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (instructing that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)); *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax*

*Cnty., Virginia*, 355 F. Supp. 3d 386, 399–400 (E.D. Va. 2018) (explaining that "because a state official sued in his official capacity stands in for the entity he represents, he is equally entitled to assert that entity's sovereign immunity from suit."). "In contrast, the Eleventh Amendment does not bar 'an award of damages against an official in his personal capacity [that] can be executed only against the official's personal asserts.'" *Adams v. Ferguson*, 884 F.3d 219, 224–25 (4th Cir. 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

"The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022); *Anderson v. Dep't of Pub. Safety & Corr.*, No. 24-1339, 2024 WL 4814882, at *1 (4th Cir. Nov. 18, 2024) (identifying the three Eleventh Amendment immunity exceptions). The three exceptions include:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 [121 S. Ct. 955, 148 L.Ed.2d 866] (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 [124 S. Ct. 899, 157 L.Ed.2d 855] (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 [122 S. Ct. 1640, 152 L.Ed.2d 806] (2002).

*Doe.*, 595 F. Supp. 3d at 409 (quoting *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012)).

Notably, "Congress has not abrogated sovereign immunity for § 1983 suits[.]" *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). As for waiver, the Supreme Court has held that a state may waive its Eleventh Amendment immunity when it voluntarily removes a case to federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002). Importantly, the State of Maryland has not waived its Eleventh Amendment immunity to claims pursuant to § 1983.

10

*See, e.g., Beckham v. Nat'l R.R. Passenger Corp.*, 569 F.Supp.2d 542, 550 (D. Md. 2008) (holding that general waiver of sovereign immunity in Transportation Article § 7-702 does not make MTA subject to § 1983 claims in federal court); *Weide v. Mass Transit Admin.*, 628 F.Supp. 247, 250-51 (D. Md. 1985) (same); *Johnson v. Maryland Dep't of Transp.*, No. CV ELH-18-1059, 2018 WL 6111779, at *7 (D. Md. Nov. 21, 2018) (same).

The remaining question then is whether Plaintiff states a claim for prospective relief against Officer Congress for an ongoing violation of federal law. "[S]uits for 'prospective injunctive relief against state officials acting in violation of federal law' are permitted" pursuant to the *Ex parte Young* exception. *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 168 (D. Md. 2022) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "Under this limited exception, a federal court may issue prospective, injunctive relief against a state official to prevent ongoing violations of federal law, such as when the state officer is enforcing, or threatening to enforce, an allegedly unconstitutional state law." *Id.* "To invoke the exception, the plaintiff must identify and seek prospective equitable relief from an *ongoing* violation of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *aff'd,* 589 U.S. 248 (2020) (emphasis in original). The exception "'does not apply when the alleged violation of federal law occurred entirely in the past,' but applies when '(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective.'" *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747 (4th Cir. 2018) (citations omitted); *see Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (same). Because Plaintiff has not brought suit for prospective injunctive relief for an ongoing violation of federal law, the *Ex parte Young* exception is inapplicable here. (ECF No. 3 ¶ 36.)

Accordingly, the court will grant the Motion as to Count III, the § 1983 claim, as against the MTA and Officer Congress in his official capacity. Because sovereign immunity does not bar suits against state officials in their individual capacities under § 1983, *see Hafer v. Melo*,

502 U.S. 21, 30-31 (1991), the court considers next Plaintiff's § 1983 claim against Officer Congress in his individual capacity.

### 3. Failure to State a § 1983 Claim

Defendants argue that Count III should be dismissed because Plaintiff fails to plead sufficient facts on which a reasonable conclusion could be drawn that Defendants violated his Fourth and Fourteenth Amendments rights. (ECF No. 6-1 at pp. 10–13.)

As a preliminary matter, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 creates a private right of action but does not create a substantive right; rather, it creates "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Two elements are essential to state a claim under § 1983; the plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a "person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (holding that "[t]o state a claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant 'under color of . . . state law.'") (citing *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' applicable to Fourteenth

Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips*, 572 F.3d at 180). "[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." *Philips*, 572 F.3d at 181 (citations and internal quotation marks omitted). As explained *supra*, Plaintiff alleges that Officer Congress violated his Fourth and Fourteenth Amendment rights, predicated on § 1983, when Officer Congress, acting under color of state law, subjected him to unlawful seizure. (ECF No. 3 ¶ 31.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. A "seizure" of a person must be "reasonable under the circumstances" to comply with the Fourth Amendment. *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 377 (D. Md. 2018) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 56 (2018)). "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). "By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142–43 (1979) (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)).

Defendants assert that Plaintiff's arrest was supported by probable cause and legally justified based on a valid warrant. (ECF No. 6-1 at p. 13.) Plaintiff contends that no reasonable officer could have believed probable cause existed to arrest him based solely on the matching surname on the warrant, because the warrant included a different date of birth and Soundex number than reflected on Plaintiff's driver's license.

Defendants point to the case of *Baker v. McCollan* for the proposition that an arrest due to "mistaken identity," pursuant to a facially valid warrant, does not amount to a constitutional violation. In *Baker*, plaintiff was mistakenly arrested in place of his brother, because his brother had shown identification with the plaintiff's name and photo when arrested on a prior occasion, and was then released on bond. 443 U.S. at 140-41. Although the plaintiff protested the arrest on the ground of mistaken identity, he was detained in a county jail for approximately three days. *Id.* at 144. The Court noted that, while the plaintiff "was indeed deprived of his liberty for a period of days, . . . it was pursuant to a warrant conforming . . . to the requirements of the Fourth Amendment." *Id.* The Court ultimately held that "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Id.* at 143. Further, an officer "executing an arrest warrant" is not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Id.* at 145-46.

Courts in the Fourth Circuit have consistently held as much. *See, e.g., Peacock v. Mayor and City Council of Baltimore*, 199 F. Supp. 2d 306, 309 (D. Md. 2002) ("It is well established that when an arrest and subsequent detention are undertaken pursuant to a facially valid warrant, there is no violation of the Fourth Amendment."); *Mitchell v. Aluisi*, 872 F.2d 577, 579 (4th Cir. 1989); *Turner v. Kight*, 192 F. Supp. 2d 391, 403–404 (D. Md. 2002); *Brooks v. Prince George's County*, HAR-90-3073, 1992 WL 63393, at *1 (D. Md. Mar. 9, 1992).

Of import, the *Baker* Court noted that it was "quite certain that a detention of three days . . . does not and could not amount to" a deprivation of liberty without due process of law. 443 U.S. at 145. Here, Plaintiff avers that he was detained for a matter of hours. In response to Defendants' argument, Plaintiff relies on the Fifth's Circuit's *McCollan v. Tate,* which was subsequently reversed by *Baker*. (ECF No. 10-1 p. 5.) The Fifth Circuit, citing to the Second

14

Restatement of Torts, held that a "sheriff or arresting officer has a duty to exercise due diligence in making sure that the person arrested and detained is actually the person sought under the warrant and not merely someone of the same or a similar name." *McCollan v. Tate*, 575 F.2d 509, 513 (5th Cir. 1978), *rev'd sub nom. Baker*, 443 U.S. at 147. In *Baker,* the Supreme Court clarified that "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker*, 443 U.S. at 146.

Plaintiff argues that "[w]here an officer has reason to know that an arrestee may be misidentified, yet fails to investigate and proceeds with detention, such conduct can violate due process." (ECF No. 10-1 p. 6.) He provides no authority in support of his position. Moreover, Plaintiff does not dispute the validity of the warrant at issue. Rather, Plaintiff asserts that Officer Congress "received information" that a William Johnson had an outstanding warrant and that Plaintiff's subsequent arrest was unreasonable under the circumstances. In his response to Defendants' Motion, Plaintiff clarifies that Officer Congress arrested Plaintiff on the basis of a verbal report from MTA Police Communications as to the outstanding warrant. *Id.* While surely not dispositive, Plaintiff does not allege that he attempted to inform Officer Congress of his mistaken identity. After Plaintiff had been detained "for hours," Officer Congress examined the warrant and Plaintiff was released. (ECF No. 3 ¶¶ 17, 21.)

As explained above, even in the case of mistaken identity, an arrest made pursuant to a facially valid warrant that results in brief detention does not give rise to a constitutional violation. *Baker*, 443 U.S. at 145. And where a plaintiff has not been deprived of a constitutional right, "the state of mind of the defendant is wholly immaterial." *Id.* at 140. Therefore, Plaintiff's claim for unlawful seizure in violation of the Fourth and Fourteenth Amendments, brought under § 1983, is subject to dismissal. Count III of the Amended

Complaint shall be dismissed as against Officer Congress in his individual capacity for failure to state a claim pursuant to Rule 12(b)(6).

### B. Plaintiff's State Law Claims

Because Plaintiff's sole federal claim will be dismissed, only Plaintiff's state law claims for violation of Article 24 of the Maryland Declaration of Rights and common law false imprisonment, Counts I and II, remain for consideration.[6] "When a district court has jurisdiction over a federal claim under 28 U.S.C. § 1331, it also has supplemental jurisdiction over related state-law claims." *Kovachevich v. Nat'l Mortg. Ins. Corp.*, 140 F.4th 548, 556 (4th Cir. 2025). 28 U.S.C. § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." "[A]lthough supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025).

The Fourth Circuit's decision in *Shanaghan v. Cahill* provides instruction on whether to exercise supplemental jurisdiction:

> The statute then goes on to provide that courts "may decline" to exercise supplemental jurisdiction in certain circumstances. 28 U.S.C. § 1367(c). In particular, a court has discretion to dismiss or keep a case when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished. *See, e.g., Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Growth Horizons, Inc. v. Delaware Cty.*,

---

[6] The court notes that in their Motion, Defendants construe Count II of Plaintiff's Amended Complaint for false imprisonment as a claim brought under § 1983. (ECF No. 6-1 p. 10.) Plaintiff's response in opposition and his Amended Complaint demonstrate that his false imprisonment claim is raised as a common law tort claim. (ECF No. 3 ¶¶ 27–29; ECF. No. 10-1 p. 10.)

> 983 F.2d 1277, 1284 (3d Cir. 1993). The doctrine of supplemental jurisdiction "thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Cohill*, 484 U.S. at 350.

58 F.3d 106, 110 (4th Cir. 1995). "[A] remand may best promote the values of economy, convenience, fairness, and comity. Both litigants and States have an interest in the prompt and efficient resolution of controversies based on state law." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988).

The court declines to exercise supplemental jurisdiction over the remaining state law claims. The case is in its infancy (in this court)—no scheduling order has been issued; no discovery has occurred. *See Tolliver v. Tandium Corp.*, No. CV ELH-21-1441, 2022 WL 80587 (D. Md. Jan. 7, 2022) (finding remand appropriate where the case "has not progressed in this [c]ourt beyond very preliminary motion practice, without any consideration on the merits") (citing *Carnegie-Mellon*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.")). Moreover, Plaintiff's remaining claims arise under Maryland state law, "which Maryland courts are 'obviously well equipped' to address." *Montgomery v. Freedom Mortg. Corp.*, No. CV GLS-21-02643, 2022 WL 3139638, at *8 (D. Md. Aug. 5, 2022) (quoting *Tolliver*, 2022 WL 80587, at *4). Where only state law claims remain, remand is appropriate because "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see Montgomery*, 2022 WL 3139638, at *8 (remanding case "where only state law claims remain because '[n]eedless decisions of state law should be avoided'") (citing *Gibbs*, 383 U.S. at 726).

Accordingly, the remaining state law claims—Counts I and II—will be remanded to the Circuit Court for Baltimore City, Maryland.[7]

## IV. **MOTION TO STRIKE**

As mentioned at the start, Defendants move to strike Plaintiff's opposition to the Motion as untimely pursuant to Local Rule 105.2. Local Rule 105.2(a) provides that "all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion[.]" Local Rule 105.2(a) (D. Md. 2025). Plaintiff's opposition was filed one day late. (ECF No. 10.)

"It is within the Court's discretion to consider an untimely [paper] for failing to abide by the Local Rules' briefing schedule." *Shields v. Verizon Maryland, LLC*, No. 1:23-CV-02932-JMC, 2024 WL 1050996, at *3 (D. Md. Mar. 11, 2024), *appeal dismissed*, No. 24-1317, 2024 WL 4531487 (4th Cir. May 17, 2024); *see Ball-Rice v. Bd. of Educ. of Prince George's Cnty.*, No. CIV.A. PJM-11-1398, 2013 WL 2299725, at *5 (D. Md. May 24, 2013) ("Since Local Rule 105.2 does not provide the consequence for a failure to meet the prescribed deadline, it is within the discretion of the court to consider a late submission untimely and strike it from the record."); *Parker v. Goldman Sachs Mortg. Co. Ltd. P'ship*, 596 F. Supp. 3d 559, 568 n.5 (D. Md. 2022) (same).

In response to the Motion to Strike, Plaintiff explains the minor delay was due to a clerical oversight and that his opposition was intended to accompany Plaintiff's Affidavit (ECF. No. 9), which was timely filed on June 5, 2025. Defendants obviously suffered no prejudice as a result of this minute hiccup. Further, the court is mindful of the Fourth Circuit's emphasis on deciding cases on their merits rather than technicalities. *See Trs. of Sheet Metal Workers' Loc. Union No. 5 & Iron Workers Emps. Ass'n, Emp. Pension Tr. v. R. Stoddard, LLC*, No.

---

[7] Accordingly, the court does not address Defendants' arguments that Plaintiff's state law claims should be dismissed under Rule 12(b)(1) because Officer Congress enjoys statutory immunity from liability under Maryland law and that Plaintiff's claims are barred for failure to file an administrative claim under the Maryland Workers' Compensation Act.

GJH-17-3286, 2019 WL 1128518, at *1 (D. Md. Mar. 8, 2019) ("The Fourth Circuit 'has a strong policy that cases be decided on their merits.'") (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)); *Shields*, 2024 WL 1050996, at *3 (denying motion to strike opposition filed six days late). The Motion to Strike will be denied.

### V.    CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 6) shall be granted in part. By separate order, Count III of Plaintiff's Amended Complaint is dismissed, Counts I and II are remanded to the Circuit Court for Baltimore City, and the Motion to Strike (ECF No. 11) is denied.

October 30, 2025                                                                 /S/
                                                                        _____
                                                                        Julie R. Rubin
                                                                        United States District Judge